**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>INSPIRE MEDICAL SYSTEMS, INC., TIMOTHY P. HERBERT, RICHARD J. BUCHHOLZ, and CARLTON W. WEATHERBY,<br><br>                    Defendants. | Case No. 25-cv-10620<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Indiana Public Retirement System ("Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon counsel's investigation, which includes, *inter alia*, review and analysis of: (i) regulatory filings made by Inspire Medical Systems, Inc. ("Inspire" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (ii) press releases, presentations, and media reports issued and disseminated by the Company; (iii) analyst reports concerning Inspire; and (iv) other public information regarding the Company.

## INTRODUCTION

1.     Plaintiff brings this securities class action against Inspire and certain of its senior executives (collectively, "Defendants") under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5, promulgated thereunder, on behalf of all investors who purchased or otherwise acquired Inspire common stock between August 6, 2024, and August 4, 2025, inclusive (the "Class Period").

2.      Inspire is a medical device company that develops and markets the "Inspire" system, an implantable neurostimulation system to treat obstructive sleep apnea.  The most recent model of the Company's device, the "Inspire V," was scheduled to launch in 2025.

3.      Throughout the Class Period, Defendants told investors that Inspire would be able to launch the Inspire V as soon as it had built up sufficient levels of inventory and reassured investors that the Company would be "ready to go" in regards to physician training, reimbursement, and contracting in order to facilitate the launch.  Once the Company had started the soft launch of Inspire V, it continued to assure investors that it was receiving "tremendous" feedback and that it was "ready to throw the switch and be able to move into full launch."  As the Company progressed to the full launch it represented to investors that that it was "making very good progress" in transitioning from the previous generation to Inspire V and that "[i]t's a pretty straightforward process to transition centers to be able to take on Inspire V and centers are excited to do so."

4.      Defendants' Class Period representations that the Company was prepared for the Inspire V launch and that the launch was progressing well were false.  In truth, Defendants knew that the Company was facing several critical issues with the Inspire V launch, including lack of demand and problems with reimbursement codes, and getting treatment centers to complete training and install the prerequisite IT program, SleepSync.

5.      The truth emerged on August 4, 2025, when Inspire announced it was lowering its full year earnings per share guidance by 80%, revealing that it had "encountered certain headwinds that slowed our efforts to transition customers to Inspire V."  According to Inspire, these headwinds included centers not completing "the training, contracting, and onboarding criteria required prior to the purchase and implant of Inspire V," as well as challenges "related to adoption

of CPT code 64568 for Inspire V for Medicare patients." As a result of these disclosures, the price of Inspire common stock declined by $42.04 per share, or 32.4%.

6.     As a result of Defendants' wrongful acts and omissions, which caused the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant damages.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

9.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b). The acts and transactions giving rise to the violations of law complained of occurred in part in this District, including the dissemination of false and misleading statements into this District. Defendants presented in person at the Piper Sandler Healthcare Conference held in New York City on December 3, 2024, where they made false and misleading statements. Inspire's common stock trades on the New York Stock Exchange, which is headquartered in this District. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

10.     Plaintiff Indiana Public Retirement System is a public pension fund organized for the benefit of public employees throughout the state of Indiana who are not covered by another state or local retirement system.  As indicated in the attached Certification, Plaintiff purchased shares of Inspire common stock at artificially inflated prices during the Class Period, and suffered damages as a result of the violations of the federal securities laws alleged herein.

11.     Defendant Inspire develops and markets implantable neurostimulation systems to treat obstructive sleep apnea.  Inspire is incorporated in Delaware and maintains its principal executive offices at 5500 Wayzata Boulevard, Suite 1600, Golden Valley, Minnesota.  Inspire's common stock trades on the New York Stock Exchange, which is an efficient market, under ticker symbol "INSP."  As of October 29, 2025, Inspire had over 29 million shares of common stock outstanding, owned by hundreds or thousands of investors.

12.     Defendant Timothy P. Herbert ("Herbert") is, and was at all relevant times, Inspire's Chief Executive Officer ("CEO") and Chairperson of the Board of Directors.

13.     Defendant Richard J. Buchholz ("Buchholz") is, and was at all relevant times, Inspire's Chief Financial Officer ("CFO").

14.     Defendant Carlton W. Weatherby ("Weatherby") is, and was at all relevant times, Inspire's Chief Strategy and Growth Officer.

15.     Defendants Herbert, Buchholz, and Weatherby are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with Inspire, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors.  Each of the Individual Defendants was provided with copies of the

Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

**BACKGROUND**

16.    Inspire develops implantable neurostimulation systems to treat obstructive sleep apnea. Its flagship product, the Inspire system, is a closed-loop hypoglossal nerve stimulation therapy. The Inspire system continuously monitors breathing and delivers mild stimulation to maintain an open airway, targeting patients intolerant of traditional Continuous Positive Airway Pressure ("CPAP") therapy.

17.    On August 2, 2024, Inspire announced that the most recent model of the device, the Inspire V, had been approved by the United States Food and Drug Administration ("FDA"). The Inspire V was the first model of the device to incorporate respiratory sensing capabilities into the neurostimulator, removing the need for a separate pressure-sensing lead that, in previous models, was surgically implanted into the patient's chest wall. The Company emphasized that this would reduce procedure times, allowing surgeons to implant more devices per day.

**DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS
CAUSE SUBSTANTIAL LOSSES TO INVESTORS**

18.    The Class Period begins on August 6, 2024, when Defendants released Inspire's results for the second quarter of 2024 and held an earnings call to discuss these results with investors. During the earnings call, Defendant Herbert told investors that Inspire would be able to launch the Inspire V as soon as it had built up sufficient levels of inventory, stating that "[w]e are

5

focused on operational readiness and building sufficient inventory to support a soft launch in late 2024 and a full launch in 2025." He elaborated that the purpose of the soft launch was to "introduce it and to make sure with all the operating norms, with the physician program, with the remote, with SleepSync and our digital tools," and reassured investors that the Company would be "ready to go" in regards to physician training, reimbursement and contracting in order to facilitate the launch.

19.    On September 4, 2024, Defendants Buchholz and Weatherby participated in a fireside chat at the Wells Fargo Healthcare Conference. During the conference, Defendant Weatherby said that the upcoming soft launch of Inspire V would "make sure we're getting real-time feedback from users to incorporate that into the training and preparation for a full launch later in the year." He continued to explain that Inspire would use the feedback from this soft launch to "ensure that we're ready to hit the ground running," with the full launch.

20.    A few months later, on November 4, 2024, Defendants announced Inspire's fiscal year 2024 third quarter results and held an earnings call with analysts and investors to discuss the results. During that call, Defendant Herbert informed investors that "[w]e have begun the soft launch of our new SleepSync programming system designed to increase the efficiency of Inspire patient management," and that "[e]arly feedback is promising."

21.    Defendants Herbert and Buchholz represented the Company at the Piper Sandler Healthcare Conference held in New York City on December 3, 2024. During that conference, Defendant Herbert told investors that "we will be doing our soft launch yet here in 2024," and "everything looks good."

22.    On January 13, 2025, Defendants presented at the JP Morgan Healthcare Conference. During this presentation, Defendant Herbert informed investors that Inspire had

started the soft launch of Inspire V. He assured investors that the "feedback has been tremendous" and that the Company was "continu[ing] to gain experience with the soft launch." Defendant Herbert further represented that "we're at the cusp of being able to launch the Inspire V."

23.     During this same presentation, the Company issued revenue guidance for 2025. Specifically, Defendant Buchholz informed investors that Inspire's revenue guidance of "$940 million to $955 million represents 17% to 19% growth over 2024." Defendant Herbert justified that "as we kind of look into next year and lean in with the launch of Inspire V and the continued demand for Inspire, that's why we are able to put this strong guide forward."

24.     On February 10, 2025, Defendants released Inspire's financial results for the fourth quarter of 2024 and held an earnings call to discuss these results with analysts and investors. During that earnings call, Defendant Herbert told investors that the "new Inspire SleepSync programming system has been fully launched in the United States." He also updated investors on the Inspire V soft launch, claiming that the Company had "already gained valuable experience with Inspire V device with systems implanted in both Singapore and in the US and early feedback has been positive." Defendant Herbert reiterated that the "primary factor driving the timing of our full launch remains building sufficient inventory to support the expected demand in the US."

25.     On May 5, 2025, Defendants released Inspire's financial results for the first quarter of 2025 and held an earnings call to discuss those results with analysts and investors. During that earnings call, Defendant Herbert announced that "we are ready and we will begin the full launch of the Inspire V system in the US this month." He told investors that "from a technology to a product to the approval to the reimbursement, as we mentioned, and the support, with the policies, with the new CPT code 64568 and, finally, with the inventory levels, we're ready to throw the switch and be able to move into full launch." Commenting further on specific aspects of the

launch, Defendant Herbert reassured investors that the change in contracts with treatment centers "should be pretty simplistic" and that "most centers are ready to take on the new physician programmer.  So the transition should not be that difficult."

26.    During a presentation at the Wells Fargo MedTech Innovation Spotlight Conference on June 13, 2025, Defendant Herbert told investors that the Company was "making very good progress right now," on the transition to Inspire V.  He claimed that "[w]e've trained the majority of the surgeons," that "[a]ll the contracts are out to the sites," and that "the majority of the top centers have already been on SleepSync."

27.    Days later, on June 17, 2025, Defendant Herbert presented at the Truist Securities MedTech Conference.  At this conference, Defendant Herbert continued to assure investors that Inspire was "making good progress" with the full launch of Inspire V.  He stated that "we're very happy with the performance of V, there's no question about it.  Happy with the rollout.  It's a pretty straightforward process to transition centers to be able to take on Inspire V and centers are excited to do so."

28.    The statements referenced in ¶¶ 18-27 were materially false and misleading, and failed to disclose material facts necessary to make the statements made, in light of the circumstances in which they were made, not false and misleading.  In truth, the Inspire V launch was going poorly due to a lack of demand caused by providers holding a significant amount of surplus inventory and adoption disincentives caused by lower physician payments.  In addition, the launch was facing a number of critical issues because Inspire had failed to complete prerequisite tasks necessary to support the launch.  Among other things, Inspire had not completed training and onboarding for many treatment centers, had not received the necessary IT approvals for centers to install the crucial SleepSync program, and failed to ensure that proper claims

processing systems and reimbursement codes were in place at the time of launch. As a result, Defendants' positive statements concerning the Company's preparedness for the Inspire V launch, and the positive progress of that launch, were materially false or misleading.

## THE TRUTH EMERGES

29.    On August 4, 2025, after the market closed, Inspire issued a press release announcing its second quarter results for fiscal year 2025. The press release revealed that "the U.S. commercial launch is progressing slower than expected, and the timeline to complete the full transition to Inspire V has been pushed forward, which will impact financial results for the year." It also informed investors that the Company was lowering full year earnings per share guidance for 2025 by more than 80%, from a range of $2.20 to $2.30 per share to $0.40 to $0.50 per share.

30.    During the earnings call that same day, Defendant Herbert told investors that the Company "encountered certain headwinds that slowed our efforts to transition customers to Inspire V." The first of these headwinds was that "many centers did not complete the training, contracting, and onboarding criteria required prior to the purchase and implant of Inspire V. Specifically, implementation of SleepSync has been the most challenging step to accomplish." In addition, Defendant Herbert admitted that, while Inspire V's Medicare CPT code had been approved in April, "the software update for claims, submissions, and processing did not take effect until July 1," meaning that "implanting centers would not be able to bill for those procedures until July 1." Defendant Herbert also disclosed that there was poor demand for the Inspire V, driven by excess inventory and a lack of patient marketing.

31.    These disclosures caused the price of Inspire common stock to decline more than 32%, from a closing price of $129.95 per share on August 4, 2025, to a closing price of $87.91 per share on August 5, 2025.

## LOSS CAUSATION

32.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market.  This conduct artificially inflated the price of Inspire common stock and operated as a fraud or deceit on the Class (as defined below).  Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, the price of Inspire common stock fell precipitously as the prior artificial inflation came out of the price over time.  As a result of their purchases of Inspire common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, i.e., damages, under the federal securities laws, which were caused by Defendants' material misrepresentations and omissions.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired the publicly traded common stock of Inspire during the Class Period (the "Class").  Excluded from the Class are Defendants and their families, directors, and officers of Inspire and their families and affiliates.

34.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  As of October 29, 2025, Inspire had over 29 million shares of common stock outstanding, owned by hundreds or thousands of investors.

35.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether Defendants violated the Exchange Act;

(b)     Whether Defendants omitted and/or misrepresented material facts;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether the Individual Defendants are personally liable for the alleged misrepresentations and omissions described herein;

(e)     Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(f)     Whether Defendants' conduct impacted the price of Inspire common stock;

(g)     Whether Defendants' conduct caused the members of the Class to sustain damages; and

(h)     The extent of damages sustained by Class members and the appropriate measure of damages.

36.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

37.     Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

38.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Joinder of all Class members is impracticable.

**INAPPLICABILITY OF STATUTORY SAFE HARBOR**

39.     Inspire's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

40.     Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of Inspire who knew that the statement was false.  None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## <u>PRESUMPTION OF RELIANCE</u>

41.     At all relevant times, the market for Inspire's common stock was an efficient market for the following reasons, among others:

(a)     Inspire common stock met the requirements for listing, and were listed and actively traded on the New York Stock Exchange, a highly efficient and automated market;

(b)     As a regulated issuer, Inspire filed periodic public reports with the SEC and the New York Stock Exchange;

(c)     Inspire regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Inspire was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain

customers of their respective brokerage firm(s).  Each of these reports was publicly available and entered the public marketplace.

42.    As a result of the foregoing, the market for Inspire common stock promptly digested current information regarding Inspire from all publicly available sources and reflected such information in the price of Inspire common stock.  Under these circumstances, all purchasers of Inspire common stock during the Class Period suffered similar injury through their purchase of Inspire common stock at artificially inflated prices and the presumption of reliance applies.

43.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are grounded on Defendants' material omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the launch of the next generation of Inspire's flagship product, positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Inspire V product to Inspire's overall business, that requirement is satisfied here.

## SCIENTER ALLEGATIONS

44.    As alleged herein, the Defendants acted with scienter since the Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  Numerous facts including those detailed above, considered collectively,

demonstrate that Defendants knew or recklessly disregarded that they were misrepresenting the prospects of the Inspire V launch and the success of the soft and full launch.

45.    First, the Inspire V launch was crucial to Inspire's business, as the Defendants spoke about it on every conference call with investors, repeatedly emphasized its importance as the next generation of the Company's flagship product, and professed a deep understanding about the steps necessary for the rollout to be successful.  The size and scope of the misstatements raise a strong inference of scienter, as they concerned the very core of Inspire's business model.  The Inspire system, of which Inspire V is the latest model, accounted for primarily all of the Company's revenue for the years ended December 31, 2024, 2023, and 2022, and the Company expects that sales of the Inspire system will continue to account for the substantial majority of its revenue going forward.

46.    In addition, the timing and circumstances surrounding the unexpected departure of Defendant Buchholz, shortly after the revelation of the alleged fraud, further supports an inference of scienter.  On August 26, 2025, less than one month after Inspire revealed the truth of investors about the issues plaguing the Inspire V launch, Defendant Buchholz announced his departure from Inspire, effective December 31, 2025.  Defendant Buchholz had worked for Inspire for 11 years and was responsible for overseeing the Company's financial operations.  Defendant Buchholz's departure from the Company shortly after the Company revealed that its prior statements about the Inspire V launch were misleading furthers a strong inference of scienter.

## CLAIMS FOR RELIEF

### COUNT I

**For Violations of Section 10(b) of the Exchange Act and Rule 10b-5
Against All Defendants**

47.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.    During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Inspire common stock at artificially inflated prices.

49.    Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Inspire common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

50.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information and misrepresented the truth about the prospects of the Company's core product.

51.    During the Class Period, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

52.     Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal Inspire's true condition from the investing public and to support the artificially inflated prices of the Company's common stock.

53.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Inspire's common stock.  Plaintiff and the Class would not have purchased Inspire common stock at the prices they paid, or at all, had they been aware that the market prices for Inspire common stock had been artificially inflated by Defendants' fraudulent course of conduct.

54.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of Inspire common stock during the Class Period.

55.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

56.     Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

57.     The Individual Defendants acted as controlling persons of Inspire within the meaning of Section 20(a) of the Exchange Act.   By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Inspire, the Individual Defendants had the

power and ability to control the actions of Inspire and its employees.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D.    Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action of all issues so triable.

Dated: December 22, 2025                          Respectfully submitted,

                                                  */s/ Hannah Ross*
                                                  Hannah Ross
                                                  Scott R. Foglietta
                                                  **BERNSTEIN LITOWITZ BERGER**
                                                  **  & GROSSMANN LLP**
                                                  1251 Avenue of the Americas
                                                  New York, NY 10020
                                                  Telephone: (212) 554-1400
                                                  Facsimile: (212) 554-1444
                                                  hannah@blbglaw.com
                                                  scott.foglietta@blbglaw.com

*Counsel for Plaintiff Indiana Public Retirement System*

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Jeffrey M. Gill, on behalf of Indiana Public Retirement System ("Indiana"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am General Counsel of Indiana and I am authorized to sign this certification on its behalf. I have reviewed the complaint and authorize its filing by counsel.

2. Indiana did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Indiana is willing to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Indiana's transactions in the Inspire Medical Systems, Inc. securities that are the subject of this action are set forth in the chart attached hereto.

5. Indiana has sought to serve and was appointed as a lead plaintiff and representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification:

   *Margolis v. Lantheus Holdings, Inc.*, No. 25-cv-7491 (S.D.N.Y.)
   *Roofers Local No. 149 Pension Fund v. GSK plc*, No. 25-cv-618 (E.D. Pa.)
   *In re Agilon Health, Inc. Securities Litigation*, No. 24-cv-297 (W.D. Tex.)
   *Henry v. Futu Holdings Limited*, No. 23-cv-3222 (D.N.J.)

6. Indiana is currently seeking to serve as a lead plaintiff and representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification:

   *City of St. Clair Shores Police and Fire Retirement System*
   *v. Lineage, Inc.*, No. 25-cv-12383 (E.D. Mich.)

7. Indiana has sought to serve as a lead plaintiff and representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification, but either withdrew its motion for appointment as lead plaintiff or was not appointed lead plaintiff:

   *Indiana Public Retirement System v. Rivian Automotive, Inc.*,
   No. 24-cv-4566 (C.D. Cal.)

8. Indiana will not accept any payment for serving as a representative party on behalf of the class beyond Indiana's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 22nd day of December, 2025.

DocuSigned by:

*Jeffrey M. Gill*

296FE2138E584D2...

Jeffrey M. Gill
General Counsel
*Indiana Public Retirement System*

**Indiana Public Retirement System**
**Transactions in Inspire Medical Systems, Inc.**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 8/21/2024 | 247 | 187.3300 |
| Purchase | 10/17/2024 | 508 | 195.2961 |
| Purchase | 10/18/2024 | 408 | 199.8402 |
| Purchase | 10/18/2024 | 498 | 200.1750 |
| Purchase | 10/21/2024 | 903 | 199.4621 |
| Purchase | 10/21/2024 | 790 | 200.2750 |
| Purchase | 10/22/2024 | 515 | 199.3495 |
| Purchase | 10/22/2024 | 5,078 | 198.8712 |
| Purchase | 10/29/2024 | 300 | 196.8942 |
| Purchase | 11/8/2024 | 1,700 | 199.9609 |
| Purchase | 11/21/2024 | 370 | 184.2461 |
| Purchase | 11/25/2024 | 1,100 | 190.3958 |
| Purchase | 12/3/2024 | 1,000 | 192.7794 |
| Purchase | 12/17/2024 | 999 | 190.8199 |
| Purchase | 12/18/2024 | 1,601 | 190.0897 |
| Purchase | 12/20/2024 | 111 | 187.7700 |
| Purchase | 12/20/2024 | 103 | 187.7700 |
| Purchase | 12/27/2024 | 150 | 188.3983 |
| Purchase | 1/13/2025 | 1,990 | 178.0729 |
| Purchase | 1/13/2025 | 410 | 176.8550 |
| Purchase | 1/16/2025 | 2,000 | 175.6163 |
| Purchase | 1/17/2025 | 200 | 176.5075 |
| Purchase | 1/27/2025 | 421 | 183.3311 |
| Purchase | 1/27/2025 | 479 | 184.3830 |
| Purchase | 1/28/2025 | 300 | 192.0184 |
| Purchase | 1/30/2025 | 100 | 194.6555 |
| Purchase | 2/20/2025 | 400 | 178.0278 |
| Purchase | 2/25/2025 | 7 | 184.8500 |
| Purchase | 3/3/2025 | 188 | 185.6948 |
| Purchase | 3/6/2025 | 163 | 178.2633 |
| Purchase | 3/19/2025 | 83 | 162.6500 |
| Purchase | 3/21/2025 | 59 | 164.9200 |
| Purchase | 3/21/2025 | 22 | 164.9200 |
| Purchase | 3/27/2025 | 19 | 160.9400 |
| Purchase | 3/31/2025 | 6,288 | 158.6921 |
| Purchase | 4/7/2025 | 347 | 147.0873 |
| Purchase | 4/17/2025 | 398 | 143.2802 |
| Purchase | 7/17/2025 | 30 | 127.9700 |

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 7/22/2025 | 34 | 129.4300 |
| | | | |
| Sale | 8/13/2024 | (20) | 192.1900 |
| Sale | 9/20/2024 | (44) | 212.8500 |
| Sale | 10/3/2024 | (23) | 205.0000 |
| Sale | 10/15/2024 | (14) | 198.9300 |
| Sale | 10/28/2024 | (195) | 194.6800 |
| Sale | 11/12/2024 | (62) | 190.7500 |
| Sale | 1/27/2025 | (297) | 184.3500 |
| Sale | 2/6/2025 | (13) | 182.1054 |
| Sale | 2/25/2025 | (5,516) | 183.9675 |
| Sale | 2/25/2025 | (3,104) | 184.0330 |
| Sale | 3/13/2025 | (17) | 159.5812 |
| Sale | 3/27/2025 | (877) | 160.9400 |
| Sale | 6/27/2025 | (145) | 132.4100 |
| Sale | 6/27/2025 | (303) | 132.4100 |