# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE INSPIRE MEDICAL SYSTEMS, INC. SECURITIES LITIGATION | Civil Action No. 1:25-cv-10620 (PAE)<br><br>CLASS ACTION |

## LEAD PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO
## TRANSFER VENUE TO THE DISTRICT OF MINNESOTA

**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
Salvatore Graziano
Rebecca E. Boon
Shane D. Avidan
Rebecca Temkin
1251 Avenue of the Americas, 44th Floor
New York, New York 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

*Counsel for Lead Plaintiff
Indiana Public Retirement System
and Lead Counsel for the Class*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      Introduction ................................................................................................... 1

II.     Background .................................................................................................... 3

        A.      Defendants' Alleged Securities Fraud .................................................. 3

        B.      Procedural History ............................................................................... 5

III.    Argument ....................................................................................................... 5

        A.      Defendants Have Not Met Their Burden of Making a Strong Case for
                Transfer by Clear and Convincing Evidence ........................................ 5

                1.      Lead Plaintiff's Choice of This Forum Is Entitled to Substantial
                        Consideration and Weighs Heavily Against Transfer. ............... 6

                2.      Relative Docket Congestion Weighs Further Against Transfer .............. 10

                3.      The Locus of Operative Facts Is Split and Does Not Favor Transfer....... 12

                4.      The Convenience of Parties, Convenience of Witnesses, and the
                        Availability of Compulsory Process Do Not Support Transfer But
                        Rather Weigh Against It .......................................................... 15

                5.      The Remaining Factors Do Not Support Transfer.................................... 20

        B.      In the Alternative, This Court Should Not Transfer the Case Until Lead
                Plaintiff Amends Its Complaint and Takes Limited Discovery ........................... 21

IV.     Conclusion .................................................................................................... 22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Atl. Marine Constr. Co. Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*,
  571 U.S. 49 (2013).............................................................................................................6

*Baby Boom Gifts, Inc. v. Lun N' Care, Ltd.*,
  1999 WL 825609 (S.D.N.Y. Oct. 15, 1999) ..........................................................22

*Beale v. Redbubble, Inc.*,
  2022 WL 11262033 (W.D.N.Y. Oct. 19, 2022) .....................................................10

*In re ChannelAdvisor Corp. Sec. Litig.*,
  2015 WL 4064625 (S.D.N.Y. July 2, 2015) ..........................................................13

*City of Birmingham Firemen's & Policemen's Supplemental Pension Sys. v.
  Pluralsight, Inc.*,
  2019 WL 12496341 (S.D.N.Y. Oct. 24, 2019) ...............................................13, 14

*City of Hollywood Firefighters' Pension Fund v. Inspire Med. Sys., Inc.*,
  2025 WL 1158653 (D. Minn. Mar. 24, 2025) ..........................................................9

*City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*,
  2015 WL 12659925 (S.D.N.Y. Apr. 30, 2015).................................................10, 13

*City of Warren Police & Fire Ret. Sys. v. Zebra Techs. Corp.*,
  2019 WL 3997354 (E.D.N.Y. Aug. 23, 2019).........................................................13

*Colabufo v. Cont'l Cas. Co.*,
  2006 WL 1210919 (E.D.N.Y. Apr. 27, 2006) ........................................................14

*In re Cuyahoga Equipment Corp.*,
  980 F.2d 110 (2d Cir. 1992).....................................................................................5

*D.H. Blair & Co. v. Gottdiener*,
  462 F.3d 95 (2d Cir. 2006).....................................................................................14

*E. Mishan & Sons, Inc. v. Smart & Eazy Corp.*,
  2018 WL 6528496 (S.D.N.Y. Dec. 12, 2018) ..........................................................6

*Erickson v. Corinthian Colleges, Inc.*,
  2013 WL 5493162 (S.D.N.Y. Oct. 1, 2013) ..........................................................13

*Factors Etc., Inc. v. Pro Arts Inc.*,
  579 F.2d 215 (2d Cir. 1978)...................................................................................16

*Ford Motor Co. v. Ryan*,
    182 F.2d 329 (2d Cir. 1950)................................................................16

*Freeplay Music, LLC v. Gibson Brands, Inc.*,
    195 F. Supp. 3d 613 (S.D.N.Y. 2016)................................................16

*Funke v. Life Fin. Corp.*,
    2003 WL 194204 (S.D.N.Y. Jan. 28, 2003) ...................................8, 14

*In re Geopharma, Inc.*,
    2005 WL 1123883 (S.D.N.Y. May 11, 2005) ..........................7, 16, 21

*Gratz v. Claughton*,
    187 F.2d 46 (2d Cir. 1951).................................................................6

*In re Hanger Orthopedic Grp., Inc. Sec. Litig.*,
    418 F. Supp. 2d 164 (E.D.N.Y. 2006) ..............................................13

*Hevesi v. Citigroup Inc.*,
    366 F.3d 70 (2d Cir. 2004)...............................................................21

*Iragorri v. United Techs Corp.*,
    274 F.3d 65 (2d Cir. 2001) (en banc)...........................................7, 8, 9

*Jimenez v. Stanford*,
    96 F.4th 164 (2d Cir. 2024) ...............................................................6

*Karam v. New York Power Auth.*,
    2017 WL 1424568 (S.D.N.Y. Apr. 20, 2017)....................................14

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*,
    330 U.S. 518 (1947)............................................................................8

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    13 F.4th 247 (2d Cir. 2021) ...............................................................6

*Manchin v. PACS Grp., Inc.*,
    2025 WL 1276569 (S.D.N.Y. May 1, 2025) ............................. *passim*

*Motown Record Corp. v. Mary Jane Girls, Inc.*,
    660 F. Supp. 174 (S.D.N.Y. 1987) ...................................................10

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
    599 F.3d 102 (2d Cir. 2010)................................................................5

*Nuss v. Guardian Life Ins. Co. of Am.*,
    2021 WL 1791593 (S.D.N.Y. May 5, 2021) ......................................11

*Parchmann v. MetLife, Inc.*,
   2018 WL 5115075 (E.D.N.Y. Sept. 28, 2018) ...........................................................7

*Ret. Sys. v. Stryker Corp.*,
   2010 WL 2035130 (S.D.N.Y. May 21, 2010) ....................................................10, 13

*In re Sarepta Therapeutics Sec. Litig.*,
   2025 WL 3110435 (S.D.N.Y. Nov. 6, 2025) ..........................................1, 6, 8, 9

*SBAV LP v. Porter Bancorp, Inc.*,
   2013 WL 3467030 (S.D.N.Y. July 10, 2013) .........................................................12

*SEC v. Milton*,
   2022 WL 3156180 (S.D.N.Y. Aug. 8, 2022) .........................................................15

*SEC v. Unifund SAL*,
   910 F.2d 1028 (2d Cir. 1990).................................................................................6

*SEC v. Yaroshinsky*,
   2006 WL 8459557 (S.D.N.Y. Oct. 5, 2006) ..........................................................15

*Steck v. Santander Consumer USA Holdings Inc.*,
   2015 WL 3767445 (S.D.N.Y. June 17, 2015) .......................................................13

*In re Vivint Solar, Inc. Sec. Litig.*,
   2020 WL 7770992 (E.D.N.Y. Dec. 30, 2020) .......................................................13

*In re Warrick*,
   70 F.3d 736 (2d Cir. 1995)...........................................................................1, 7, 9

*Woldanski v. TuSimple Holdings, Inc.*,
   2023 WL 1795191 (S.D.N.Y. Feb. 7, 2023).........................................................12

**Statutes**

15 U.S.C. § 78aa(a) ........................................................................................................6

15 U.S.C. § 78u-4(a)(3) ...............................................................................................8, 9

15 U.S.C. § 78u-4(b)(3)(B)........................................................................................12, 22

28 U.S.C. § 1404(a) ....................................................................................................5, 16

**Other Authorities**

Fed. R. Civ. P. 15(a)(1)................................................................................................21

Fed. R. Civ. P. 45(c)(1)(A) ..........................................................................................17

Lead Plaintiff Indiana Public Retirement System ("INPRS") respectfully opposes Defendants' motion to transfer venue to the District of Minnesota.

## I.  <u>Introduction</u>

Defendants' motion should be denied because Defendants have not carried their burden to prove, by clear and convincing evidence, that reasons of convenience require overturning Lead Plaintiff's choice of venue in this District, where Lead Plaintiff filed the initial complaint. As set forth below, there are good reasons for this case to be here and not in Minnesota.

***First***, a PSLRA lead plaintiff's choice of forum "weighs heavily" on a motion to transfer. *In re Sarepta Therapeutics Sec. Litig.,* 2025 WL 3110435, at *2 & n.2 (S.D.N.Y. Nov. 6, 2025) (Engelmayer, J.). Even applying less deference because INPRS resides out of state and seeks to represent a class, its choice is still entitled to "substantial consideration." *In re Warrick*, 70 F.3d 736, 741 (2d Cir. 1995) (per curiam). That deference is reinforced by INPRS's large individual loss, the substantial connection between the lawsuit and the District, and INPRS's valid reasons for choosing this District rather than its home state of Indiana.

***Second***, trial efficiency and the interests of justice also weigh strongly against transfer. The most recent statistics published by the Administrative Office, which courts often consult on transfer motions, show that the District of Minnesota has 2.8 times more cases per judgeship and is deciding civil motions more than 66% slower than this District. And that data does not yet fully reflect the added burden related to Operation Metro Surge, which has reportedly required Minnesota court staff to work "around the clock" and pulled in senior judges from other districts to sit by designation in Minnesota. Transferring this case would increase the burden on that court and likely delay justice for Lead Plaintiff and the class. There is no Inspire V-related securities fraud case currently pending in the District of Minnesota.

1

*Third*, the locus of operative facts is split between this District and elsewhere and does not support transfer. Defendants allegedly made materially false statements that defrauded investors purchasing the stock of Inspire Medical Systems Inc. ("Inspire") on the New York Stock Exchange ("NYSE"). Defendant Timothy Herbert, Inspire's CEO, also personally traveled to this District to make one of the allegedly false and misleading statements at issue. In addition, Defendant Herbert made multiple allegedly false and misleading statements in response to direct questions from an investment bank securities analyst based just outside this District.

*Fourth*, the convenience of witnesses and the parties and the availability of compulsory process for unwilling witnesses do not support transfer, but rather weigh against it. Several non-party witnesses are located within the subpoena power of this Court and thus can be compelled to attend a trial and testify in-person here but not in the District of Minnesota. Further, even if some of these witnesses might appear voluntarily (which is more likely if the case remains here), it would be more convenient for them to travel to Manhattan than Minneapolis. Those non-party witnesses include: Inspire's former salespersons in and around New York City; providers in and around New York City to whom Defendants attempted to sell the Inspire V device at issue in this case; a doctor that the Company paid as a key opinion leader for Inspire V; and the investment bank analysts whose important questions were met with allegedly false responses from Defendants. In comparison, the convenience of party witnesses, such as the Individual Defendants and any other Inspire executives in Minnesota, is less important. Defendants have not shown that they would be unduly burdened by travel here.

The remaining factors—the location of relevant documents and the relative means of the parties—are neutral and thus do not support transfer.

This District was convenient enough for Defendants to list their stock here and to communicate with investors here. There is no injustice or undue inconvenience in holding Defendants accountable here for an alleged fraud perpetrated in substantial part in this District.

Because Defendants have not carried their burden, Defendants' motion to transfer should be denied. Alternatively, and at minimum, Defendants' motion should not be granted until Lead Plaintiff amends the complaint it filed prior to its appointment (which it intends to do by March 30, 2026) and has an opportunity to take discovery limited to facts relevant to this motion.

## II.    Background

### A.    Defendants' Alleged Securities Fraud

This is a securities fraud action alleging claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 thereunder. Defendants are Inspire and three of its senior executives (its CEO, CFO, and Chief Strategy and Growth Officer). Inspire manufactures surgically implantable medical devices that treat obstructive sleep apnea with hypoglossal nerve stimulation. In other words, the device at issue zaps the nerve that controls the tongue so that the tongue does not block the airway. Inspire's stock trades on NYSE.

As alleged in the Complaint, starting in August 2024, Defendants made multiple false and misleading statements related to the launch of the fifth and newest version of Inspire's only product, the "Inspire V." Defendants' statements were designed to assure investors that the launch was successful and that Inspire V was being adopted by doctors and hospitals. For example, Defendants stated that the feedback from providers on Inspire V was overwhelmingly positive, without disclosing any negative feedback from providers. ¶¶3, 19-20, 22, 24.[1]

---

[1]    Unless otherwise noted, citations to ¶__ are to paragraphs of the Complaint, Dkt. No. 1. All emphasis added unless otherwise noted.

Defendants further represented to investors that the Company was ready to begin a full launch, ¶¶18-19, 21, and then that the full launch was progressing apace with adoption of Inspire V proving straightforward, ¶¶26-27. In addition, Defendants touted Inspire V's eligibility for reimbursement from payors at higher rates compared to its predecessor, Inspire IV. ¶25. Based on the purported early success of the Inspire V launch, the Company issued bullish revenue growth guidance of 17% to 19% for 2025, which it reaffirmed repeatedly. ¶23.

In truth, Defendants' statements were allegedly false and misleading and omitted material facts because the Inspire V launch faced several known but undisclosed headwinds for which the Company had no solution or that would take a year or more to resolve. Among other issues, and as Defendants knew or recklessly disregarded: leading up to and in the early stages of the launch, the Company had oversold Inspire IV, leaving surplus inventory on providers' shelves, meaning that providers were unwilling to buy Inspire V until they destocked Inspire IV; providers had not completed preparatory steps that were necessary before a provider could purchase even one unit of Inspire V, such as doctor training, contracting, and onboarding; providers' IT departments were hesitant to approve the installation of the SleepSync software, which was necessary to operate Inspire V, due to well-founded concerns about patient privacy and information security that the Company was unable to allay; and providers were unable to obtain the greater reimbursements that Defendants had touted. ¶28.

Investors learned the truth beginning on August 4, 2025, when Defendants revised their guidance downward and acknowledged that multiple "headwinds" had plagued the Inspire V launch. Those serious issues included a lack of necessary training, unsigned contracts, incomplete onboarding, refusals to install the SleepSync software, problems with reimbursement,

and excess Inspire IV inventory. ¶¶29-30. In response to this news, Inspire's stock price declined by nearly one-third. ¶31.

### B.    Procedural History

INPRS filed this action on December 22, 2025. ECF No. 1. On January 5, 2026, INPRS moved to be appointed as lead plaintiff and for approval of its selection of Bernstein Litowitz as lead counsel, which motion the Court granted on January 28, 2026. ECF Nos. 11, 18, 27.

On January 22, 2026, Defendants filed a motion to transfer this case to the District of Minnesota pursuant to 28 U.S.C. § 1404(a). ECF No. 20 ("Motion" or "Mot.").

### III.    Argument

### A.    Defendants Have Not Met Their Burden of Making a Strong Case for Transfer by Clear and Convincing Evidence

Section 1404(a) permits a district court to transfer an action to another federal judicial district "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). "[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 117 (2d Cir. 1992).

The non-exclusive list of factors relevant to the Court's discretionary decision include: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.,* 599 F.3d 102, 112 (2d Cir. 2010).

The party seeking a transfer for convenience has the "burden of making out a ***strong*** case for transfer" by "***clear and convincing*** evidence." *Id.* at 114. "Clear and convincing" evidence

must give the factfinder "an abiding conviction that the truth of the factual contentions are highly probable." *Jimenez v. Stanford*, 96 F.4th 164, 191 (2d Cir. 2024). Such evidence must be "neither equivocal nor open to opposing presumptions." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 260 (2d Cir. 2021).

Defendants cannot carry their burden by clear and convincing evidence, and their motion omits any mention of that governing standard.

### 1.    Lead Plaintiff's Choice of This Forum Is Entitled to Substantial Consideration and Weighs Heavily Against Transfer.

The first factor, plaintiff's choice of forum, militates against transfer and is dispositive here. "[P]laintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations)."[2] *Atl. Marine Constr. Co. Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013). When, as here, the Court has appointed a lead plaintiff pursuant to the PSLRA, that lead plaintiff's choice of forum "**weighs heavily**" on a motion to transfer. *In re Sarepta Therapeutics Sec. Litig.,* 2025 WL 3110435, at *2 & n.2 (S.D.N.Y. Nov. 6, 2025) (Engelmayer, J.). Even if some other factors tend to favor transfer, deference to plaintiff's choice of forum can preclude a clear and convincing case for transfer. *E. Mishan & Sons, Inc. v. Smart & Eazy Corp.*, 2018 WL 6528496, at *12 (S.D.N.Y. Dec. 12, 2018) (Engelmayer, J.) (even though the "locus of events" favored transfer,

---

[2]    Defendants do not argue that this Court lacks jurisdiction or is an improper venue—nor could they. "[T]he Securities Exchange Act permits the exercise of personal jurisdiction to the limit of the Due Process Clause of the Fifth Amendment," and jurisdiction lies when a defendant's conduct has a "foreseeable effect within the United States," including (as here) on a security "listed exclusively on a United States stock exchange." *SEC v. Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir. 1990). Venue is proper "in the district wherein any act or transaction constituting the violation occurred" or where defendant "transacts business." 15 U.S.C. § 78aa(a); *see Gratz v. Claughton*, 187 F.2d 46, 49 (2d Cir. 1951) (venue proper where transactions "took place on the floors of the New York Exchanges").

the Court "cannot, and does not, find that the balance of factors clearly favors transfer" because "another important factor (the plaintiff's choice of forum) favors the current venue").

Defendants argue that Lead Plaintiff's choice should get "little weight" because: (1) INPRS resides in Indiana; and (2) it seeks to represent a class. Mot. at 6, 12-13. That conclusion is foreclosed by controlling law. While a plaintiff's choice of forum is a "*less* significant consideration" when that plaintiff is not a district resident and seeks to represent a class, such a plaintiff's choice of forum is *still* "entitled to *substantial consideration*." *In re Warrick*, 70 F.3d 736, 741 & n.7 (2d Cir. 1995) (per curiam). In *Warrick* itself, the Second Circuit granted a mandamus petition, finding that transfer was a "clear abuse of discretion," and ordered the district court to request return of a class case that had been filed by a New York resident in Connecticut federal court. *Id.* at 737-38 & n.3, 740.

Many courts in the Second Circuit have denied transfer motions in securities cases based on the substantial deference owed to lead plaintiff—even though it is "less" than the theoretical maximum amount of deference. *E.g.*, *Manchin v. PACS Grp., Inc.*, 2025 WL 1276569, at *2 (S.D.N.Y. May 1, 2025) (lead plaintiff's choice entitled to "less weight," not "no weight"); *Parchmann v. MetLife, Inc.*, 2018 WL 5115075, at *1-2 (E.D.N.Y. Sept. 28, 2018), *R&R adopted*, 2018 WL 5113138 (E.D.N.Y. Oct. 19, 2018) (lead plaintiff's choice entitled to "less deference," not "*no* deference") (emphasis in original); *In re Geopharma, Inc.*, 2005 WL 1123883, at *1 (S.D.N.Y. May 11, 2005) (even though class plaintiff gets "less deference," defendants must make "convincing showing" to overcome its choice).

Defendants argue that the reduction in deference follows mechanically from INPRS's residence (and class allegation), Mot. at 6, 12-13, but "[t]he rule is not so abrupt or arbitrary." *Iragorri v. United Techs Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc). Here, Defendants do

not contend (and there is no reason to believe) that Indiana was a convenient or proper venue to bring this case. As a result, "[i]t would make little sense to withhold deference for the plaintiff's choice merely because she did not sue in her home district." *Id.* at 73. *Irragori* involved a *forum non conveniens* dismissal, but its logic on this point applies to motions to transfer as well. *Funke v. Life Fin. Corp.*, 2003 WL 194204, at *3 (S.D.N.Y. Jan. 28, 2003) (citing *Irragori* and denying motion to transfer securities fraud case filed by non-resident plaintiffs with a "legitimate reason … to bring suit outside their home forum").

Under the circumstances, INPRS should receive "substantial" deference—even as a class plaintiff, and "even if the class overall does not disproportionately favor a certain forum." *Manchin*, 2025 WL 1276569, at *2. INPRS suffered an individual loss of more than $2 million. ECF No. 13-2. That massive individual claim alone warrants "substantial" deference to INPRS's choice of forum. *Manchin*, 2025 WL 1276569, at *2 (PSLRA lead plaintiff who lost "almost half a million dollars" entitled to "substantial" deference as an individual plaintiff and "[t]hat it seeks to represent a class makes its choice of a New York forum no less legitimate").[3] This case is also atypical of pre-certification class actions because the Court—in appointing INPRS as Lead Plaintiff pursuant to the PSLRA—made findings of adequacy and typicality. ECF No. 27; *see* 15 U.S.C. § 78u-4(a)(3). In those circumstances, Lead Plaintiff should be permitted to choose venue on behalf of the whole class. Any contrary venue preferences of non-lead class members would be "irrelevant." *Sarepta*, 2025 WL 3110435, at *2 n.2.

---

[3]    *Cf. Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 523-25 (1947) (representative plaintiff's choice of forum entitled to less deference because such plaintiff "as in this case, often have only a small financial interest" and may "be a mere phantom plaintiff with interest enough to enable him to institute the action and little more").

Further, Lead Plaintiff's choice is fortified by the case's substantial connections to this District, discussed below, including alleged misstatements made here, additional questions from at least one New York City area analyst that were answered with alleged misstatements, the Inspire V launch occurring here in part, and Inspire's stock trading exclusively on NYSE. "[T]he greater … the lawsuit's bona fide connection … to the forum of choice" the greater the deference. *Iragorri,* 274 F.3d at 72.

Defendants speculate that "gamesmanship" has occurred because: (1) a non-lead plaintiff voluntarily dismissed a similar lawsuit filed in the District of Minnesota; and (2) Inspire previously prevailed on a motion to dismiss an unrelated securities fraud case there (not involving Inspire V).[4] Mot. at 12-13 (arguing "gamesmanship" warrants less deference "*if*" it occurred). This is a red herring. The non-lead plaintiff who filed in Minnesota purchased only about 7% as much Inspire stock as INPRS, Ex. 1; ECF No. 13-1, and thus was not likely to be appointed lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). Lead Plaintiff's choice of forum would merit the same deference even if the non-lead plaintiff had continued its action. Either way, a non-lead plaintiff's choice is "irrelevant." *Sarepta,* 2025 WL 3110435, at *2 n.2. Further, a transferee court's perceived inclination to grant a dispositive motion has "***nothing to do***" with the convenience relevant to a motion to transfer. *Warrick*, 70 F.3d at 737 (that "previous case" has been "decided and dismissed" in transferee district has "nothing to do with 'the convenience of the parties and witnesses'"). To the extent that Defendants prefer to be in a district where an unrelated case against them was dismissed, that preference is legally irrelevant to this motion.

---

[4]    The unrelated action involved a non-overlapping class period of May 3, 2023 to November 7, 2023 and statements about a pilot program in which Inspire assisted providers in obtaining insurance pre-approvals. *City of Hollywood Firefighters' Pension Fund v. Inspire Med. Sys., Inc*., 2025 WL 1158653 (D. Minn. Mar. 24, 2025). The Inspire V did not have FDA approval at any time during that class period. The company was selling the Inspire IV then.

### 2.    Relative Docket Congestion Weighs Further Against Transfer

Another significant consideration weighing against transfer is unprecedented docket congestion in the District of Minnesota, which is much worse than in this District. Such congestion is relevant to the factors of trial efficiency and the interests of justice. *Motown Record Corp. v. Mary Jane Girls, Inc.*, 660 F. Supp. 174, 174 (S.D.N.Y. 1987) (holding that "the court may consider the state of the dockets in both the transferor and transferee courts," and denying transfer after taking "judicial notice of the calendar problems" in proposed transferee district); *cf. City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*, 2010 WL 2035130, at *5 (S.D.N.Y. May 21, 2010) (cited Mot. at 10) (granting transfer because transferee district had substantially lighter caseload per judge according to Administrative Office statistics).

According to the most recent available statistics from the Administrative Office of the U.S. Courts (as of December 31, 2025), the District of Minnesota has about ***2.8 times more*** pending cases per judgeship than this Court (1,714 versus 612),[5] making the District of Minnesota the 6th busiest district in the nation by that measure, while this Court (often one of the busiest) sits for the moment at 27th. Ex. 2. The District of Minnesota also has a ***66% longer*** median time to decision for civil motions (9.3 months versus 5.6 months). *Id.* Courts often consult those two statistics—pending cases per judgeship and median decision time for civil motions—to measure relative docket congestion. When both metrics point in the same direction, they weigh strongly in favor of moving a case to (or here, keeping a case in) the district with both fewer pending cases per judge and a faster median decision time. *Beale v. Redbubble, Inc.*,

---

[5]    This statistic is based on 28 judgeships for this District and 7 judgeships for the District of Minnesota. This District has 3 vacancies and 20 senior status judges for a total of 45 district judges. Exs. 6, 7. The District of Minnesota has no vacancies and 6 senior status judges for a total of 13 district judges. Exs. 7, 8. Accounting for vacancies and senior status judges, the District of Minnesota would still have 2.4 times more pending cases per judge than this District.

2022 WL 11262033, at *4 (W.D.N.Y. Oct. 19, 2022) ("judicial economy" factor "conclusively supports transfer" because the Northern District of California had fewer cases per judge and a faster median decision time).[6]

As stark as these statistics are, there is reason to believe they understate the current state of docket congestion in the District of Minnesota because they do not yet fully reflect the impact of Operation Metro Surge, a federal immigration enforcement operation that began in December 2025. More than 500 additional immigration-related habeas petitions (more than 70 per judgeship) were filed in January 2026, typically involving emergency motions. Ex. 4. Reportedly, the Court has "struggled to manage a sharply increased caseload" caused by that operation, with one judge quoted as saying: "Our court staff has essentially been working around-the-clock." Ex. 3. To triage the surge in filings, two visiting district judges from other states have been sitting by designation. Ex. 5. Even once the immigration operation subsides, there is no reason to believe the level of congestion prevailing before it will quickly disappear. **Before** Operation Metro Surge (as of September 30, 2025), the District of Minesota had **2.9 times** more cases per judgeship and a **46% longer** median decision time for civil motions than this District. Ex. 2. The District of Minnesota has no vacancies to fill; this Court has three. Ex. 7.

Transferring this case to the District of Minnesota would only increase the burden on that Court—and force this action to compete for attention with public-law matters generating non-stop emergency motions. It was reasonable for Lead Plaintiff to choose a forum with much less

---

[6]      *Cf. Manchin*, 2025 WL 1276569, at *14 & n.16 (docket congestion did not support transfer because two statistics pointed in opposite directions: even though District of Utah had fewer cases per judge, it had slower median time to decision for civil motions, suggesting that Utah's "lower per-judge caseload … does not translate directly into trial efficiency"); *Nuss v. Guardian Life Ins. Co. of Am.*, 2021 WL 1791593, at *9 (S.D.N.Y. May 5, 2021) (similar; factor "neutral" because N.D. Ga. had more cases per judge and faster median time to decision).

congestion and a substantially faster moving docket. The delay in deciding civil motions is a particularly important factor in a securities fraud case because discovery would be automatically stayed during the pendency of a motion to dismiss. *See* 15 U.S.C. § 78u-4(b)(3)(B).

Defendants contend that the factors of trial efficiency and the interests of justice support transfer, but they do not explain why, instead asserting that it is for "much the same reasons" as the convenience of witnesses. Mot. at 9. Because, as discussed below, the witnesses whose convenience Defendants cite are exclusively party witnesses under Inspire's control, securing their appearance does not create a significant case management issue or injustice.[7]

### 3. The Locus of Operative Facts Is Split and Does Not Favor Transfer

Defendants' lead argument for transfer is the "locus of operative facts," which Defendants define, in securities cases, as solely the place "where the alleged misrepresentations were made." Mot. at 7-8. This argument is self-defeating because Defendants made at least one alleged misstatement in this District. ¶¶9, 21 (Defendant Herbert's statement at Piper Sandler Healthcare Conference in New York City on December 3, 2025, which Defendant Bucholz also attended); Exs. 11-12. Even under Defendants' definition of the "locus" (which, as discussed below, is too narrow), the locus lies in this District, at least in part.

The in-District alleged misstatement distinguishes this case from nearly all the securities decisions cited by Defendants, where *all* the alleged misstatements were made outside the District. *E.g.*, *SBAV LP v. Porter Bancorp, Inc.*, 2013 WL 3467030, at *4 (S.D.N.Y. July 10, 2013) (Engelmayer, J.) ("Here, the alleged misrepresentations were *all* made in Kentucky").[8]

---

[7]     Defendants' Motion cites as a fact supporting transfer that "a lead plaintiff has not even been appointed yet." Mot. at 9; *see id.* at 4-5. That is no longer true. ECF No. 27.

[8]     *Cf. Woldanski v. TuSimple Holdings, Inc.*, 2023 WL 1795191, at *4 (S.D.N.Y. Feb. 7, 2023) ("*all* the statements Plaintiff is challenging, as well as the documents related to those

Defendants who take their securities fraud on the road, making allegedly false statements in multiple judicial districts, can reasonably be held accountable in more than one district. They do not have a right to a transfer to a district where they made most (but not all) of their alleged misstatements.

Defendants cite only one case that granted a motion to transfer where an alleged misstatement was made in this District. Mot. at 7 (citing *City of Birmingham Firemen's & Policemen's Supplemental Pension Sys. v. Pluralsight, Inc.*, 2019 WL 12496341 (S.D.N.Y. Oct. 24, 2019)). *Pluralsight* recites that one statement was "made at a conference in New York City," 2019 WL 12496341, at *1, but contains no further discussion of that fact. There were other reasons for transfer, including that the alleged misstatements concerned Pluralsight's salesforce, which was "based overwhelmingly in Utah." *Id.* This case likewise concerns, in significant part,

---

statements, were issued from S.D. Cal"); *In re Vivint Solar, Inc. Sec. Litig.*, 2020 WL 7770992, at *3 (E.D.N.Y. Dec. 30, 2020) ("The company's filings were prepared and signed by senior management in Utah and were disseminated from the Lehi, Utah corporate office."); *City of Warren Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 2019 WL 3997354, at *6 (E.D.N.Y. Aug. 23, 2019) ("Here, the statements at issue were prepared, issued, or made in Lincolnshire, Illinois, where relevant personnel worked and where Zebra's headquarters were located."); *In re ChannelAdvisor Corp. Sec. Litig.*, 2015 WL 4064625, at *3 (S.D.N.Y. July 2, 2015) ("Plaintiff does not dispute Defendants' contention that these alleged misrepresentations occurred in North Carolina, not New York."); *Steck v. Santander Consumer USA Holdings Inc.*, 2015 WL 3767445, at *7 (S.D.N.Y. June 17, 2015) ("Deka does not contest the fact that Santander issued the registration statements … at its headquarters in Dallas."); *City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*, 2015 WL 12659925, at *6 (S.D.N.Y. Apr. 30, 2015) (most alleged misstatements made at "Dell headquarters in Round Rock, Texas" and one at "conference in San Francisco"); *Erickson v. Corinthian Colleges, Inc.*, 2013 WL 5493162 (S.D.N.Y. Oct. 1, 2013) ("The alleged misrepresentations in this case were disseminated from Corinthian headquarters in the Central District of California."); *Stryker*, 2010 WL 2035130, at *2 ("*All* statements at issue in the complaint were disseminated from Stryker's headquarters in Kalamazoo."); *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 167 (E.D.N.Y. 2006) ("*All* of the financial statements and press releases at issue were prepared in Bethesda by Hanger personnel at the company's headquarters.").

Inspire's salesforce, but unlike *Pluralsight*, as discussed below, Inspire's sales force was dispersed throughout the country, not "based overwhelmingly" in Minnesota.

Decisions that have considered the import of a "split" locus, have concluded that it either weighs against or does not support transfer. *Funke*, 2003 WL 194204, at *4 (finding locus "split" because "some [facts] occurred in New York" and thus that "this district has a much greater connection to this case than does the plaintiffs' home district," which "was a legitimate reason for them to bring suit outside their home forum"); *Colabufo v. Cont'l Cas. Co.*, 2006 WL 1210919, at *3 (E.D.N.Y. Apr. 27, 2006) ("Where significant contacts exist with several fora, the locus of operative events becomes less of a concern in deciding the motion to transfer venue."); *Karam v. New York Power Auth.*, 2017 WL 1424568, at *2 (S.D.N.Y. Apr. 20, 2017) (that "the locus of operative facts is split between the two districts" supported conclusion that "plaintiff's choice of forum should not be disturbed").

The Court should also consider, as part of the locus of facts, the questions that were asked by at least one investment bank analyst based in the New York City area to which Defendants gave allegedly false and misleading answers. *See, e.g.*, Exs. 9-10, Ex. 13 at 106. This Court found that the location of analysts was not an important factor in *SEC v. Hill International, Inc.*, because the "SEC [did] ***not*** allege that … [anyone] aware of Hill's bogus accounting … personally engaged with, let alone uttered or disseminated any false or misleading statements to, any such persons." 2020 WL 2029591, at *4 (S.D.N.Y. Apr. 28, 2020) (Engelmayer, J.). Here, in contrast, Defendants ***are*** alleged to have made false statements directly to analysts.

The exclusive listing of Inspire's stock on the NYSE is also a relevant and important part of the locus of facts in this District. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) ("The fraud and manipulation alleged by the Investors involved conduct by Broker

relating to securities traded on the New York exchanges …. Thus, venue in the S.D.N.Y. was appropriate."); *SEC v. Milton*, 2022 WL 3156180, at *9 (S.D.N.Y. Aug. 8, 2022) ("critical events took place in this District, including … trading of Nikola stock on NASDAQ"); *SEC v. Yaroshinsky*, 2006 WL 8459557, at *4 (S.D.N.Y. Oct. 5, 2006) ("a number of the trades involved in this case were executed on the AMEX, located in New York City," which is "relevant to a determination of where venue should [b]e").

Defendants contend that the NYSE cannot be "relevant" because, if it were relevant, "every" securities fraud case could not be transferred from this District. Mot. at 8. This line of reasoning is oversimplified and does not lead where Defendants say. *First*, even if NYSE listing is not alone dispositive of every transfer motion, it is still an important factor that should be weighed. *Second*, the statute provides for venue in the location of the transaction, which explains the importance of exchanges in determining venue. *Supra*, p. 6 n.2. Inspire chose to list its stock exclusively on NYSE and not on any securities exchange outside this District. *Third*, contrary to Defendants' suggestion, meritorious transfer motions are supposed to be rare. Defendants have the burden to overturn Lead Plaintiff's choice by clear and convincing evidence. *Supra*, pp. 5-6.

### 4. The Convenience of Parties, Convenience of Witnesses, and the Availability of Compulsory Process Do Not Support Transfer But Rather Weigh Against It

Defendants' next argument is that trial in Minnesota would be more convenient for Defendants' "key witnesses," who Defendants say, are the "Individual Defendants" themselves and Inspire's other "executive officers," all but one of whom reside in the "Minneapolis-St. Paul metropolitan area" (one lives in Wisconsin and another in Florida). Mot. at 8-9. In a declaration, Inspire's general counsel asserts that (1) the "people primarily involved in the preparation or issuance" of the alleged misstatements and (2) the "primary individuals who most likely will have knowledge concerning the subject matter of this action" also reside in that metropolitan

area. ECF No. 20-2 ¶¶7-9, 11. He further asserts that "Inspire has no offices in New York" and that "[n]one of the relevant employees work or reside in New York." *Id.* ¶¶3, 11.

Under well-established law, Defendants' showing is insufficient. "When a party seeks the transfer on account of the convenience of witnesses under § 1404(a), he ***must*** clearly specify the key witnesses to be called and ***must*** make a general statement of what their testimony will cover." *Factors Etc., Inc. v. Pro Arts Inc.*, 579 F.2d 215, 218 (2d Cir. 1978). The only witnesses identified by name in the general counsel's declaration are the Individual Defendants and the Investor Relations officer (who lives in Florida). The persons purportedly involved in the "preparation or issuance" of the alleged misstatements, ECF No. 20-2 ¶¶7-9, and the persons purportedly "most likely" to have knowledge of the subject matter, *id.* ¶11, are not specified. There is no statement of what the testimony of any witness, named or unspecified, will cover.

Further, all the witnesses identified by Inspire's general counsel are Inspire employees, whose convenience does not weigh so strongly. *See Manchin*, 2025 WL 1276569, at *11 (convenience of party witnesses "does not weigh as heavily" as non-parties); *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 617 (S.D.N.Y. 2016) ("convenience to non-party witnesses is accorded more weight than that of party witnesses"); *Geopharma*, 2005 WL 1123883, at *2 ("convenience of defendants' *party* witnesses cannot operate to eliminate section 27's explicit provision for jurisdiction wherever any violation occurred." (emphasis in original)).

While it may be more convenient for Inspire employees based in Minnesota to attend a trial in Minneapolis than Manhattan, Defendants have not shown that a trial in Manhattan would be unduly ***in***convenient—as is their burden. *See, e.g.*, *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir. 1950) ("[T]here will be no great interference with the Ford business if Ford officials must come to New York [from] Detroit to testify. All of them do not have to be in attendance at

once; the defendant lawyers can consult them, in considerable part, by telephone; the trip from Detroit to New York by plane, or even by train, is a short one; and the expense of telephoning and traveling will not be a very ponderable element in litigation of this magnitude.").

Indeed, during discovery, any undue burden on the witnesses identified by Defendants can be addressed—for example, with remote depositions (which are not uncommon post-COVID). Defendants would only be required to travel to Manhattan for trial.

Defendants' Motion does not account for all witnesses with knowledge of the true facts. For example, Inspire's general counsel asserts that Inspire has no "*offices*" or "*relevant employees*" in New York, ECF No. 20-2 ¶¶3, 11, while omitting that Inspire has (and had, during the Class Period) many employees who live and work in this District (or within its 100-mile subpoena power under Federal Rule of Civil Procedure 45(c)(1)(A)). Ex. 13. Those witnesses include the sales territory managers and field clinical representatives responsible for many Inspire sales territories. *Id.* at 3, 5, 7, 10, 14, 16, 20, 23, 25, 27, 29, 33, 35, 37, 39, 43, 50, 54, 58, 62, 65, 67, 71, 73, 75, 77, 79, 81, 86, 88, 92, 96, 98, 100, 104-05. The sales territory managers were on the front lines of the Inspire V launch and likely have knowledge of the feedback from providers and the progress of the launch (or lack thereof).[9] To the extent the general counsel determined, self-servingly, that none of Inspire's many current and former employees in the New York City area would have "relevant" testimony, he did not explain why.

At least one analyst who asked questions to which Defendants gave allegedly false answers is also in the New York City area. *See* Ex. 13 at 106. Another witness within the Court's subpoena power is Dr. Maria Suurna, a Manhattan otolaryngologist retained by Inspire as a key

---

[9] Other Inspire witnesses within this Court's subpoena power had responsibilities related to software and cyber security, which are among the headwinds facing the launch. *Id.* at 1, 48.

opinion leader for Inspire V. Exs. 23-24. Other key opinion leaders for Inspire V are much closer to Manhattan than Minneapolis, including Drs. Ryan Soose, Tom Kaffenberger, and Rachel Whelan in Pittsburgh, Pennsylvania and Dr. Phil Huyett in Boston, Massachusetts. Exs. 25-28.

While Inspire's salesforce and field clinical representatives appear to be dispersed nationally, this Court can likely compel in-person testimony from a much larger and more diverse subset of these current and former employees. The same is true for third-parties such as providers. This Court's subpoena power extends to densely populated parts of at least four states (New York, Connecticut, New Jersey, and Pennsylvania) with nearly 28 million people, while the federal court in Minneapolis can reach only parts of Minnesota and Wisconsin with closer to 5 million people. Exs. 14-15. Population is a proxy for the number of patients, providers, and sales territories. For example, according to Inspire's website, there are 140 Inspire providers within 150 miles of the zip code for this courthouse, compared to just 38 providers for the Minneapolis courthouse. Exs. 16-17.

**Maps of subpoena power of federal courts in Manhattan and Minneapolis**



*See* Ex. 29.

This Court's subpoena power spans two different jurisdictions for Medicare Administrative Contractors (MACs), with National Government Services (NGS) covering New York and Connecticut, while Novitas covers Pennsylvania and New Jersey. Ex. 18. In contrast, the Minneapolis federal court's subpoena power is limited to the territory of NGS. *Id.* Defendants made statements to the effect that the MACs had agreed to reimburse the Inspire V implantation procedure based on a more lucrative Medicare CPT code than that used for the Inspire IV.[10] In reality, the MACs did not complete their reviews of Inspire V's coding until late 2025/early 2026, when each MAC (and CMS) stated publicly that the Inspire V was ineligible for the more lucrative code. Exs. 19-22. Witnesses from providers in Pennsylvania and New Jersey should be able to contrast what Inspire and Novitas told them about Inspire V's coding throughout 2025—a time period in which investors remained unaware that the Company's statement that Inspire V could be billed to the more lucrative code was in dispute or under review.

Further, during and following the launch of Inspire V, there was rapid turnover in Inspire's sales force in the New York City area. *See* Ex. 13 (at least 8 salespersons in New York City area, who worked for Inspire during Class Period, have already departed). These former employees—as well as other third parties in the New York City area such as analysts, providers,

---

[10]    Specifically, the more lucrative CPT code is 64568, titled "*Open implantation of cranial nerve (eg, vagus nerve) neurostimulator electrode array and pulse generator.*" The less lucrative CPT code is 64582, titled "*Open implantation of hypoglossal nerve neurostimulator array, pulse generator, and distal respiratory sensor electrode or electrode array.*" The implantation of Inspire IV had initially coded to 64568 but has been coded to 64582 since that code was created in 2022. Both Inspire IV and V stimulate only the hypoglossal nerve, not the vagus nerve. The company's position was that the implantation of Inspire V could be coded to the more lucrative code (64568) because it lacked a "distal respiratory sensor electrode"—*i.e.*, that providers could get more reimbursement for doing less work. The MACs and Centers for Medicare & Medicaid Services have now stated publicly that Inspire V can only be coded to 64582, not 64568. Exs. 19-22.

and Dr. Suurna—can be compelled to testify at trial here but not in Minneapolis. Even if some of these witnesses might appear voluntarily, *see* Mot. at 10-11, they are more likely to do so closer to home, and it would be much more convenient for them to appear in Manhattan.

For these reasons, the convenience of witnesses and the availability of compulsory process weigh against transfer and outweigh any marginal convenience to Defendants' party witnesses. *See* Mot. at 10-11 (arguing that compulsory process factor is "neutral").

### 5.    The Remaining Factors Do Not Support Transfer

The remaining factors do not support transfer either. Defendants half-heartedly claim that the location of documents "favors transfer" because Inspire's documents are located in Minnesota but then acknowledge, as they must, that this factor might be "neutral" after "considering the electronic submission of documents." Mot. at 10. The latter is true. Electronic discovery neutralizes this factor, as many courts have held. *E.g.*, *Manchin*, 2025 WL 1276569, at *13; *Geopharma*, 2005 WL 1123883, at *3. Defendants make no showing that this case involves evidence that cannot conveniently be digitized for discovery purposes.

Lastly, Defendants also acknowledge that the final two factors, the relative means of the parties and the forum's familiarity with the governing law, are neutral. Mot. at 11-12.

*        *        *

Lead Plaintiff's choice of forum, relative docket congestion, the convenience of witnesses, and the availability of compulsory process for unwilling witnesses weigh against transfer, while the remaining factors are either neutral or at worst favor transfer only slightly. The balance of factors neither clearly nor convincingly supports transfer.

**B.      In the Alternative, This Court Should Not Transfer the Case Until Lead Plaintiff Amends Its Complaint and Takes Limited Discovery**

The Court should defer decision on this motion at least until Lead Plaintiff amends the Complaint that it filed before its appointment. Lead Plaintiff intends to do so by March 30, 2026.[11] PSLRA lead plaintiffs routinely file amended complaints after appointment, which is consistent with their right and duty to "exercise control over the litigation as a whole," including by deciding which claims to bring on behalf of the class. *Hevesi v. Citigroup Inc.,* 366 F.3d 70, 82 n.13 (2d Cir. 2004). The amended complaint will supersede the current complaint and frame the claims that give rise to the locus of operative facts and relevant witnesses.

In addition, Defendants' arguments for transfer, particularly those regarding the convenience of witnesses and the locus of operative facts, depend upon factual assertions of matters peculiarly within Defendants' knowledge. Before relying on the self-serving facts asserted by Defendants, the Court should exercise its discretion to permit Lead Plaintiff to take discovery, limited to facts relevant to this motion. *Baby Boom Gifts, Inc. v. Lun N' Care, Ltd.*, 1999 WL 825609, at *2 (S.D.N.Y. Oct. 15, 1999) (deferring decision on motion to dismiss for improper venue to permit "expedited discovery" including "depositions"). Lead Plaintiff has requested that Defendants answer interrogatories regarding: the identity of Inspire's current and former employees within this Court's subpoena power; those persons' roles and responsibilities related to Inspire V; the identity of the providers within this Court's subpoena power to whom the Company sold or attempted to sell Inspire V; and the dates on which those providers took

---

[11]      While the parties have not yet been able to reach agreement upon a scheduling stipulation, Lead Plaintiff has a right to amend its complaint under Fed. R. Civ. P. 15(a)(1) because Defendants have not answered or filed a Rule 12 motion.

certain steps to adopt Inspire V. Lead Plaintiff has also requested a deposition of Inspire's declarant on this motion, limited to facts relevant to this motion.[12]

## IV.    <u>Conclusion</u>

Defendants' motion to transfer should be denied. Alternatively, before this Court rules, Lead Plaintiff should first have an opportunity to amend the complaint that it filed prior to its appointment and to take discovery limited to facts relevant to this motion.

Dated: February 5, 2026          Respectfully submitted,
        New York, NY

                                 **BERNSTEIN LITOWITZ BERGER**
                                 **& GROSSMANN LLP**

                                 By:  _/s/ Salvatore Graziano_
                                      Salvatore Graziano
                                      Rebecca E. Boon
                                      Shane D. Avidan
                                      Rebecca Temkin
                                      1251 Avenue of the Americas, 44th Floor
                                      New York, New York 10020
                                      Tel: (212) 554-1400
                                      Fax: (212) 554-1444

                                      _Counsel for Lead Plaintiff_
                                      _Indiana Public Retirement System_
                                      _and Lead Counsel for the Class_

---

[12]    The PSLRA's automatic stay of discovery applies "during the pendency of any motion to dismiss," 15 U.S.C. § 78u-4(b)(3)(B), and Defendants have not filed any motion to dismiss. If Defendants were to file a motion to dismiss, this Court would have the discretion to lift the stay "to prevent undue prejudice." _Id._ It would be unduly prejudicial to transfer this case to the District of Minnesota based on Defendants' untested factual assertions.