UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: Inspire Medical Systems, Inc. Securities Litigation | Civil Action No. 1:25-cv-10620 (PAE)<br><br>CLASS ACTION |

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO
TRANSFER VENUE TO THE DISTRICT OF MINNESOTA

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 2

I.     Defendants Have Easily Met Their Burden to Show That a Transfer to Minnesota Would Be an Appropriate Exercise of Discretion. ............................. 2

     A.    Plaintiff fails to distinguish the dozen-plus cases transferring securities cases analogous to this one. ....................................................... 3

     B.    The "locus of operative facts" favors transfer because the at-issue statements were devised and largely emanated from Minnesota, the location of Inspire's *only* corporate office. ............................................... 3

     C.    Witness convenience favors transfer because the people who are actually likely to be witnesses, i.e., Inspire executives, live or work in Minnesota. ....................................................................................... 5

     D.    Plaintiff's tactical decision to file in this District warrants little weight because Plaintiff is an Indiana fund seeking to represent a nationwide class. ..................................................................................... 7

     E.    Plaintiff overemphasizes docket-congestion concerns, a minor factor in the transfer analysis. ..................................................................... 9

     F.    Plaintiff does not contest that the other factors are neutral or favor transfer. ............................................................................................... 10

II.    The Court Does Not Need to Either Wait for An Amended Complaint or Lift the PSLRA's Automatic Discovery Stay to Rule on This Motion. .............. 10

CONCLUSION ......................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*In re AT&T/DirecTV Now Sec. Litig.*,
　480 F. Supp. 3d 507 (S.D.N.Y. 2020).................................................................... 4

*In re AtheroGenics Sec. Litig.*,
　2006 WL 851708 (S.D.N.Y. Mar. 31, 2006) ................................................... 3, 4, 6

*Baby Boom Gifts, Inc. v. Lun N' Care, Ltd.*,
　1999 WL 825609 (S.D.N.Y. Oct. 15, 1999) ....................................................... 10

*Beale v. Redbubble, Inc.*,
　2022 WL 11262033 (W.D.N.Y. Oct. 19, 2022)...................................................... 9

*In re CenturyLink, Inc. Sec. Litig.*,
　2014 WL 1089116 (S.D.N.Y. Mar. 18, 2014) ...................................................... 5

*City of Birmingham Firemen's & Policemen's Supp. Pension Sys. v. Pluralsight,*
　*Inc.*, 2019 WL 12496341 (S.D.N.Y. Oct. 24, 2019) ............................................. 4

*City of Pontiac Gen. Emps. Ret. Sys. v. Dell, Inc.*,
　2015 WL 12659925 (S.D.N.Y. Apr. 30, 2015)................................................... 5, 9

*City of Warren Police & Fire Ret. Sys. v. Zebra Techs. Corp.*,
　2019 WL 3997354 (E.D.N.Y. Aug. 23, 2019)................................................... 4, 6

*City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*,
　2010 WL 2035130 (S.D.N.Y. May 21, 2010) ...................................................... 5

*In re Collins & Aikman Corp. Sec. Litig.*,
　438 F. Supp. 2d 392 (S.D.N.Y. 2006)................................................................. 6

*D.H. Blair & Co. v. Gottdiener*,
　462 F.3d 95 (2d Cir. 2006)............................................................................. 2, 5

*E. Mishan & Sons, Inc. v. Smart & Eazy Corp.*,
　2018 WL 6528496 (S.D.N.Y. Dec. 12, 2018) .................................................... 8

*In re Energy Transfer Sec. Litig.*,
　2022 WL 17477854 (S.D.N.Y. Nov. 7, 2022)............................................. 2, 3, 6, 7

*Faulkner v. Verizon Commc'ns, Inc.*,
　156 F. Supp. 2d 384 (S.D.N.Y. 2001)................................................................ 10

*Funke v. Life Fin. Corp.*,
　2003 WL 194204 (S.D.N.Y. Jan. 28, 2003) ..................................................... 5, 8

*In re Geopharma, Inc. Sec. Litig.,*
  2005 WL 1123883 (S.D.N.Y. May 11, 2005) .................................................................. 8

*Iragorri v. United Techs. Corp.,*
  274 F.3d 65 (2d Cir. 2001).................................................................................. 7, 8

*Manchin v. PACS Group, Inc.,*
  2025 WL 1276569 (S.D.N.Y. May 1, 2025) .................................................................. 8

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.,*
  599 F.3d 102 (2d Cir. 2010)................................................................................. 2

*Parchmann v. MetLife, Inc.,*
  2018 WL 5115075 (E.D.N.Y. Sept. 28, 2018) ............................................................ 8

*In re Sarepta Therapeutics Sec. Litig.,*
  2025 WL 3110435 (S.D.N.Y. Nov. 6, 2025).............................................................. 2

*SBAV LP v. Porter Bancorp., Inc.,*
  2013 WL 3467030 (S.D.N.Y. July 10, 2013) ............................................................ 6

*SEC v. Brda,*
  2024 WL 4817475 (S.D.N.Y. Nov. 18, 2024)........................................................ 3, 7, 9

*SEC v. Milton,*
  2022 WL 3156180 (S.D.N.Y. Aug. 8, 2022)............................................................ 5

*SEC v. Yaroshinsky,*
  2006 WL 8459557 (S.D.N.Y. Oct. 5, 2006)............................................................ 5, 9

*Steck v. Santander Consumer USA Holdings, Inc.,*
  2015 WL 3767445 (S.D.N.Y. June 17, 2015) .......................................................... 7

*In re Warrick,*
  70 F.3d 736 (2d Cir. 1995)................................................................................ 7

*Woldanski v. TuSimple Holdings, Inc.,*
  2023 WL 1795191 (S.D.N.Y. Feb. 7, 2023)............................................................ 8

**Statutes, Rules & Regulations**

15 U.S.C. § 78u-4(b)(3)(B).................................................................................. 10

iii

## **INTRODUCTION**[1]

Plaintiff's opposition to Defendant's motion to transfer (the "Opposition") is an exercise in deflection. Because it cannot rebut the key facts and authorities Defendants cited, Plaintiff ignores them. Plaintiff emphasizes the deference courts normally afford a plaintiff's choice of forum (most outside the securities context), without acknowledging the reams of decisions transferring *securities*-fraud cases brought by non-New York plaintiffs (like Plaintiff, an Indiana pension fund) in circumstances exactly like this. Plaintiff highlights a single, non-actionable statement made by Inspire's CEO at a New York investor conference but doesn't address all the other alleged facts and statements anchoring the case to Minnesota. Plaintiff trumpets low-level New York sales representatives as *potential* witnesses, while ignoring that this is a securities-fraud dispute centered on alleged *executive* wrongdoing, which means that all of the *certain* witnesses will be found in Minnesota, where the executives and Inspire are located. Plaintiff even cynically invokes docket-congestion concerns—including the emergency immigration litigation arising out of "Operation Metro Surge"—to argue that Defendants should not be afforded the convenience of litigating a non-emergency, Minnesota-centric dispute in their home state, without citing a single case where a court denied a transfer motion for an analogous reason.

Reading between the lines, Defendants understand that Plaintiff's counsel is based in New York City and so would prefer not to litigate in Minnesota. But the convenience of Plaintiff's counsel is not an appropriate consideration on a motion to transfer. (Mot. 9.) And Plaintiff offers no other persuasive rationale for maintaining this action in New York and thereby inconveniencing every other party, witness, and lawyer involved in this case. The Court should follow this District's well-trodden case law addressing securities-fraud transfers and transfer this case to Minnesota.

---

[1] This reply uses the same abbreviations and defined terms used in Defendants' opening brief. All citations to "Mot." are to ECF No. 21 and all citations to "Opp." are to ECF No. 28.

## ARGUMENT

Plaintiff does not dispute that this action could have been brought in the District of Minnesota. Thus, the only question is whether transfer to the District of Minnesota "would be an appropriate exercise of the Court's discretion." (*Id.* at 6–13.) It would be.

### I. Defendants Have Easily Met Their Burden to Show That a Transfer to Minnesota Would Be an Appropriate Exercise of Discretion.

Before addressing the discretionary factors, Defendants make two points about the legal standard. *First*, Plaintiff implies that, because the Second Circuit has permitted district courts to use a "clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion," *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010), that means that "meritorious transfer motions are supposed to be rare." (Opp. 15.) That is incorrect. There is a welter of cases transferring securities cases exactly like this one even when applying a "clear and convincing" standard. *See, e.g., In re Energy Transfer Sec. Litig.*, 2022 WL 17477854, at *1 (S.D.N.Y. Nov. 7, 2022). The key point is that courts have "broad discretion" to decide transfer motions, which, in the unique context of securities litigation, often results in courts transferring cases from this District to the defendants' home district. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). *Second*, Plaintiff implies that, because the Court recently appointed it Lead Plaintiff, its choice of forum should "weigh heavily." (Opp. 1, 6.) Again, Plaintiff is wrong. The one case it cites in support of this proposition, *In re Sarepta Therapeutics Securities Litigation*, 2025 WL 3110435 (S.D.N.Y. Nov. 6, 2025), helps Defendants, not Plaintiff. In *Sarepta*, this Court held that the plaintiff's choice of forum was entitled to significant weight when the *plaintiff* sought to *transfer* the case *to* the defendant's home district—the opposite of what Plaintiff seeks here. *Id.* at *2. Plaintiff cites no other case suggesting that its status as Lead Plaintiff should bear on the transfer analysis, and, as best Defendants can tell, none exists.

2

A.    **Plaintiff fails to distinguish the dozen-plus cases transferring securities cases analogous to this one.**

Turning to application of the discretionary factors, the most notable aspect of the Opposition is the sheer amount of on-point case law it ignores. In their opening brief, Defendants cited *15* cases where a court transferred a securities class action to the defendant's home district in analogous circumstances. (*See* Mot. 6–13.) Defendants could have cited even more.[2] Yet Plaintiff does not seriously attempt to distinguish these decisions. At most, Plaintiff attempts to distinguish *some* of the decisions on *one* of the nine factors—the "locus of operative facts" factor. Plaintiff notes that, in some cases, "*all* the alleged misstatements were made outside" New York, whereas, here, *one* of the alleged misstatements was made in New York. (Opp. 12 n.8.) Not only is that picayune distinction irrelevant and manufactured, *infra* § I.B, but also it does not address the parts of the decisions rejecting Plaintiff's arguments on the other factors. Plaintiff's failure to engage with the relevant case law is a red flag that Plaintiff does not have a compelling position on the merits.

B.    **The "locus of operative facts" favors transfer because the at-issue statements were devised and largely emanated from Minnesota, the location of Inspire's *only* corporate office.**

Plaintiff's argument grows weaker once each of the transfer factors is considered individually. Start with the "locus of operative facts" factor. Plaintiff does not dispute that "the locus of operative events in a securities action is where the alleged misrepresentations were made . . . *not* where the statements at issue [were] received." (Mot. 7 (citing cases).) Here, almost all the statements were made from Minnesota, the location of Inspire's headquarters and its only substantial business office. (*See* Phillips Decl. (ECF No. 20-2) ¶¶ 3–9.) And with respect to the

---

[2] *See, e.g.*, *SEC v. Brda*, 2024 WL 4817475, at *1, *5–10 (S.D.N.Y. Nov. 18, 2024) (transferring securities fraud case to Texas, where the corporate defendant's "principal place of business was located"); *Energy Transfer*, 2022 WL 17477854, at *2–5 (same); *In re AtheroGenics Sec. Litig.*, 2006 WL 851708, at *3–5 (S.D.N.Y. Mar. 31, 2006) (similar).

3

few alleged misstatements made at investor conferences outside Minnesota, the planning and preparation for those conferences still took place in Minnesota. (*Id.* ¶ 9.) *See City of Warren Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 2019 WL 3997354, at *6 (E.D.N.Y. Aug. 23, 2019) (transferring securities case to defendant's home district where statements "were prepared, issued, *or* made" from the defendant's headquarters (emphasis added)). This reality of centralized public-company decisionmaking is why courts routinely transfer securities actions to the district where the issuer's corporate headquarters is located, even if some of the relevant facts or alleged misstatements occurred in other states. *See AtheroGenics*, 2006 WL 851708, at *3–4 (transferring action even though CEO had made multiple "New York appearances" to tout the relevant product, because "at issue" in a securities case is "the conduct of the defendant corporation" and the "locus of all relevant [corporate] decisionmaking" was defendant's Georgia "headquarters").

Plaintiff emphasizes one alleged misstatement made at a New York conference (Opp. 2, 12–13), but one statement cannot support keeping the action here when the bulk of the facts are anchored elsewhere. *See City of Birmingham Firemen's & Policemen's Supp. Pension Sys. v. Pluralsight, Inc.*, 2019 WL 12496341, at *1 (S.D.N.Y. Oct. 24, 2019). It especially cannot because it is non-actionable, as a matter of law,[3] and was added solely to prevent transfer. (*Compare* ECF No. 20-1, Ex. A (predecessor Minnesota complaint) (not alleging anything about the New York conference) *with* Compl. ¶ 21 (adding that allegation).)

Plaintiff also notes that an analyst who participated in two of the at-issue investor calls lives "just outside this District" (Opp. 2) and that Inspire's stock is listed on the New York Stock Exchange. (*Id.* at 14–15.) But neither the residence of analysts *elsewhere* nor Inspire's decision to

---

[3] The Complaint alleges that Herbert's New York statement was to tell investors that "we will be doing our soft launch yet here in 2024," and "everything looks good"—a classic example of inactionable puffery. *See In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 523–24 (S.D.N.Y. 2020) (statement that defendant was "feeling very good about the ability to retain price" was puffery), *aff'd*, 2022 WL 17587853, at *2 (2d Cir. Dec. 13, 2022).

4

list its stock on the NYSE is germane to the transfer analysis. *See In re CenturyLink, Inc. Sec. Litig.*, 2014 WL 1089116, at \*2 (S.D.N.Y. Mar. 18, 2014) (transferring case even though plaintiff identified New York-based analysts who attended conference calls, because the calls were "documented" and so analyst testimony would be "cumulative"); *City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*, 2010 WL 2035130, at \*4 (S.D.N.Y. May 21, 2010) (listing on "New York Stock Exchange . . . does not favor venue in New York"). The few cases Plaintiff cites in support of its contrary position are far afield.[4]

Given all this, Plaintiff errs in asserting that there is "split" locus in this case, with "some [facts] occur[ing] in New York" and other facts occurring in Minnesota. (Opp. 14.) *Cf., e.g., Funke v. Life Fin. Corp.*, 2003 WL 194204, at \*3 (S.D.N.Y. Jan. 28, 2003) (holding that a split locus existed where one of three corporate defendants was headquartered in SDNY and the IPO that was the subject of the alleged misstatements also "took place in" New York). Rather, this case is a "garden-variety federal securities fraud class action involving a named Plaintiff that has no particular connection to this District and . . . [a] a corporate Defendant . . . headquartered" in another district—here, Minnesota. *City of Pontiac Gen. Emps. Ret. Sys. v. Dell, Inc.*, 2015 WL 12659925, at \*7 (S.D.N.Y. Apr. 30, 2015) (granting transfer).

### C.    Witness convenience favors transfer because the people who are actually likely to be witnesses, i.e., Inspire executives, live or work in Minnesota.

Plaintiff's arguments regarding witness convenience and the availability of compulsory process fail for much the same reasons. Plaintiff does not dispute that, because this is a securities fraud case, the "key witnesses" are the Inspire "'officer and employees . . . who participated in drafting and disseminating' the alleged misstatements," including the three Individual Defendants.

---

[4] *See D.H. Blair*, 462 F.3d at 105 (not transferring broker-investor arbitration dispute where forum-selection clause required case to be litigated in New York); *SEC v. Milton*, 2022 WL 3156180, at \*7–9 (S.D.N.Y. Aug. 8, 2022) (not transferring SEC enforcement action where defendant's related criminal trial was already pending in SDNY); *SEC v. Yaroshinsky*, 2006 WL 8459557, at \*4 (S.D.N.Y. Oct. 5, 2006) (not transferring SEC insider-trading action).

(Mot. 8 (citing cases).) Nor does Plaintiff dispute that all those witnesses work or reside in Minnesota, as set forth in the Phillips Declaration. (*Id.*) And although Plaintiff claims that Defendants' showing is "insufficient" because it does not detail the specific "testimony" specific witnesses will offer (Opp. 16), courts do not require such specifics in the securities-fraud context. *See Energy Transfer*, 2022 WL 17477854, at *3 ("where . . . it is obvious that a substantial portion of the witnesses are located in the transferee district . . . a list of witnesses and the[ir] probable subject matter" is unnecessary). It is self-evident what the Individual Defendants will testify about in a lawsuit that they made misstatements: they will explain what the statements were, why they were not false or materially misleading, and other similar context.

Regardless, Defendants are submitting here a supplemental Phillips Declaration (i) listing specific witnesses (including *non*-party witnesses) who likely have knowledge of either (a) Inspire's investor communications and earnings guidance, or (b) the rollout of the Inspire V device and SleepSync programming, and (ii) confirming that each of those potential witnesses lives or works in the Twin Cities metropolitan area. *See AtheroGenics*, 2006 WL 851708, at *3–4 (considering supplemental declaration). It makes no sense to "impose" on Inspire the "substantial expense" of requiring these witnesses to travel to New York. *SBAV LP v. Porter Bancorp., Inc.*, 2013 WL 3467030, at *8 (S.D.N.Y. July 10, 2013) (Engelmayer, J.) (crediting this concern); *Zebra Techs.*, 2019 WL 3997354, at *6 (securities trial away from headquarters, in New York, "could disrupt the Company's operations"). That is especially true as to non-party witnesses like former Inspire vice president Randy Ban, who is beyond this Court's subpoena power. *See, e.g., In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 397 (S.D.N.Y. 2006) (granting transfer; non-party witnesses were "beyond the subpoena power of this court").

6

Unable to explain how litigating this securities lawsuit in New York will be convenient for anyone who is material to this case (other than Plaintiff's counsel), Plaintiff speculates that a hodgepodge of sales representatives, prescribing physicians, and Medicare employees—many of whom live outside this District—*may* have knowledge relevant to this dispute and *may* need to be compelled to testify. (Opp. 17–20; *see* ECF No. 29-13 (LinkedIn profiles), ECF Nos. 29-23–28 (CMS physician payment reports).) But Plaintiff offers no facts to support that surmise; the only people it identifies were seemingly pulled at random from public websites. *Cf. Brda*, 2024 WL 4817475, at *8 (declining to consider purported witnesses identified by plaintiff where the plaintiff did not "assess[]" the "witness's expected role in the case or the materiality of [their] testimony"); *Steck v. Santander Consumer USA Holdings, Inc.*, 2015 WL 3767445, at *5 (S.D.N.Y. June 17, 2015) (same, where plaintiff's purported local witnesses were "not of great significance" compared to the company executives). And with respect to all the people Plaintiff identifies who merely live closer to this District than Minnesota—but not *in* this District—those people are "irrelevant" to the transfer analysis. *Energy Transfer*, 2022 WL 17477854, at *3.

**D.      Plaintiff's tactical decision to file in this District warrants little weight because Plaintiff is an Indiana fund seeking to represent a nationwide class.**

Plaintiff's claim that its choice of forum is entitled to "substantial" weight is also meritless. (Opp. 1, 6–7.) The law is clear: when a plaintiff is based outside the District and seeks to represent a nationwide class, like here, the "deference" afforded the plaintiff's choice of forum is "greatly diminished." (Mot. 12 (citing cases).) The few cases Plaintiff cites do not say otherwise.

In *Warrick*, an ERISA case, the Second Circuit reversed a transfer order because the out-of-state plaintiff had properly sued the defendant in Connecticut, the defendant's "principal place of business," and where "a disproportionate share of the putative class" resided. *In re Warrick*, 70 F.3d 736, 738 n.3, 741 n.7 (2d Cir. 1995). *Iragorri v. United Technologies Corp.* is even more

7

afield: it involved a Florida resident suing two Connecticut companies in Connecticut, based on an accident that occurred in Columbia, because it was unclear if the plaintiff could "obtain jurisdiction over the defendant[s]" in Florida or Columbia. 274 F.3d 65, 69–70, 72–73 (2d Cir. 2001). No such concern about jurisdiction exists here. And *Manchin v. PACS Group, Inc.* is readily distinguishable. *See* 2025 WL 1276569 (S.D.N.Y. May 1, 2025). There, a New York-based pension fund brought securities claims—including, unlike here, a Section 11 claim—against both a Utah corporation and, with respect to the Section 11 claim, several "Underwriter Defendants . . . headquartered in New York." *Id.* at *3, *9, *11–12. The court accordingly held that the plaintiff had "legitimate" reasons to sue in New York and, so, the plaintiff's choice of forum was owed some "deference." *Id.* at *9.[5] Here, by contrast, Plaintiff is an Indiana pension fund suing three Minnesota-based Defendants under Section 10(b) for conduct with essentially no connection to New York.

What's more, Plaintiff's motivation for suing in New York is primarily, if not exclusively, "tactical" and thus its choice of forum is owed especially little weight. *See Iragorri*, 274 F.3d at 73. Plaintiff does not dispute that it coordinated the filing of this suit with the dismissal of the predecessor Minnesota Action one day earlier. (*Compare* Mot. 12–13 *with* Opp. 9.) This strategy suggests that Plaintiff filed in this District both to avoid a forum where Defendants recently received a favorable result in another securities suit (Mot. 12–13), and to avoid application of the first-filed doctrine, which would have further supported Defendants' motion, even if Plaintiff

---

[5] The four other cases Plaintiff cites where a court granted a motion to transfer are distinguishable on similar grounds. (*See* Opp. 6–8.) *Funke* also involved a Section 11 claim brought against New York-based underwriters. *Supra* at 5. *Parchmann v. MetLife, Inc.* declined to transfer from one New York district to another because the defendant was "headquartered in" New York and had not shown why the case needed to be moved across neighboring districts. 2018 WL 5115075, at *3–6 (E.D.N.Y. Sept. 28, 2018). *In re Geopharma, Inc. Securities Litigation* contains little analysis and is rooted in concern for plaintiff *counsel's* convenience—an improper consideration. *Compare* 2005 WL 1123883, at *2–3 (S.D.N.Y. May 11, 2005) *with* Mot. 9. And this Court's decision in *E. Mishan & Sons, Inc. v. Smart & Eazy Corp.* was a false-advertising case brought by a New York plaintiff. 2018 WL 6528496, at *1–3, *10–11 (S.D.N.Y. Dec. 12, 2018).

ultimately became lead plaintiff as it has here. *See, e.g., Woldanski v. TuSimple Holdings, Inc.,* 2023 WL 1795191, at *3 (S.D.N.Y. Feb. 7, 2023) (transferring case to first-filed district).

### E. Plaintiff overemphasizes docket-congestion concerns, a minor factor in the transfer analysis.

Plaintiff's "docket congestion" argument further evinces a tactical motive. This Court has often remarked that it "tread[s] lightly" when "comparing calendar congestion across federal districts," *Brda,* 2024 WL 4817475, at *9, and, thus, that data revealing a few months' difference in average disposition times between the current and transferee forums (or similar statistics) should play a "minimal[]" role in the transfer analysis, *see, e.g., id.; Dell,* 2015 WL 12659925, at *7; *Yaroshinsky,* 2006 WL 8459557, at *5.

Undeterred, Plaintiff devotes pages to "docket congestion" arguments, citing the exact kind of minute distinctions this Court rejects as minimally relevant. (*See, e.g.,* Opp. 1, 10–12 (noting that, in 2025, it took 3.5 months longer to receive a civil decision in Minnesota versus SDNY).) And it does so without citing a single case where relative docket congestion played a material role in a court's decision to deny a transfer motion. *Cf. Beale v. Redbubble, Inc.,* 2022 WL 11262033, at *4 (W.D.N.Y. Oct. 19, 2022) (*granting* motion to transfer copyright-infringement case to defendant's home district and only briefly addressing relative docket congestion).

Not content to let a crisis go to waste, Plaintiff then makes the extraordinary argument that the Court should keep this case to avoid "burden[ing]" Minnesota judges dealing with the ramifications of "Operation Metro Surge" and to ensure that "this action" does not have to "compete for attention with" those "public-law matters." (Opp. 11–12.) As Minnesota residents, Defendants (and the undersigned counsel) are well aware of the burden Operation Metro Surge has placed on our federal judiciary. But Plaintiff offers no reason to think that a short-term spike in emergency immigration litigation will have a material effect on this *securities* case, which does

not involve emergency relief, and which will unfold gradually over several months regardless of where it is litigated.

**F.      Plaintiff does not contest that the other factors are neutral or favor transfer.**

In its opening brief, Defendants argued that the other four factors favored transfer or were neutral: (1) trial efficiency and the interests of justice (Mot. 9), (2) the location of the documents (*id.* at 10), (3) the relative means of the parties (*id.* at 11), and (4) the forum's familiarity with the governing law (*id.* at 12). Plaintiff does not dispute any of Defendants' arguments on these points and, thus, has waived any argument to the contrary. (Opp. 20.)

**II.      The Court Does Not Need to Either Wait for An Amended Complaint or Lift the PSLRA's Automatic Discovery Stay to Rule on This Motion.**

Plaintiff alternatively suggests that the Court should defer this decision until Plaintiff files its forthcoming Amended Complaint and/or the Court permits it to take discovery. (*Id.* at 21–22.) Neither alternative is appropriate. If Plaintiff was aware of additional facts relevant to the transfer analysis, it could have asserted those in its Opposition. Its failure to do so is telling. And discovery is a non-starter because the Private Securities Litigation Reform Act automatically stays discovery when "the defendant . . . inten[ds] to file a motion to dismiss," as Defendants intend to do here once the operative complaint is on file and the Court has decided where this action will be litigated. *Faulkner v. Verizon Commc'ns, Inc.*, 156 F. Supp. 2d 384, 402 (S.D.N.Y. 2001); 15 U.S.C. § 78u-4(b)(3)(B). Notably, Plaintiff cites no case where a court has lifted the PSLRA stay to allow discovery relevant to a transfer motion.[6]

## CONCLUSION

The Court should grant the motion and transfer this action to the District of Minnesota.

---

[6] *Baby Boom Gifts, Inc. v. Lun N' Care, Ltd.*, 1999 WL 825609 (S.D.N.Y. Oct. 15, 1999) was not a securities case and involved a mixed challenge to personal jurisdiction *and* venue. (Opp. 21.)

Dated: February 12, 2026

Sandra D. Grannum (#2107423)
**FAEGRE DRINKER BIDDLE & REATH LLP**
1177 Avenue of the Americas, 43rd Floor
New York, NY  10036
Telephone: (973) 549-7015
sandra.grannum@faegredrinker.com

Matthew Kilby (*pro hac vice forthcoming*)
Jeffrey P. Justman (*pro hac vice forthcoming*)
**FAEGRE DRINKER BIDDLE & REATH LLP**
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
matthew.kilby@faegredrinker.com
jeff.justman@faegredrinker.com

*Attorneys for Defendants*

11